**STATE of Maine**

v.

**Joseph M. CLOUTIER.**

Supreme Judicial Court of Maine.

March 14, 1973.

John B. Beliveau, County Atty., Thomas E. Delahanty, II, Asst. County Atty., Auburn, M. Kelly Matzen, Legal Intern, for plaintiff.

Berman, Berman & Simmons, P. A. by Jack H. Simmons, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEBBER, Justice.

The defendant Cloutier was found guilty by a jury of a sale October 9, 1971 of a hallucinogenic drug, D-lysergic acid diethylamide commonly known and hereinafter referred to as LSD-25, in violation of 22 M.R.S.A., Sec. 2212–C (enacted by P.L. 1971, Ch. 487, Sec. 3 effective as emergency legislation on June 23, 1971). His appeal raises four issues for our consideration.

Motion for Chemical analysis of Drug

Defendant seasonably filed a pretrial motion which, with formal portions omitted, contained the following:

"Now comes the Defendant and states as follows:

1. The proof of the State's case in the above action depends upon the chemical analysis of the substances charged therein.

2. It is necessary to the proper preparation of the Defense that Defendant be provided with a sample of said substance

and means whereby he can obtain an independent analysis of the contents.

3. Your Defendant is indigent.

4. The substances noted above are in the custody of the State, or its agents. Wherefore Defendant requests the Court order the following:

(a) That the State provide to Defendant, his attorney or agents, a sample of any substance which will be introduced into evidence in proof of the within indictment.

(b) That a reputable independent laboratory be appointed and authorized to conduct a chemical analysis of said substances, payment thereof to be made from Court funds.

(c) That payment from Court funds be authorized for travel expenses and reasonable witness fees for an independent expert witness to testify to the chemical composition of said substances."

The motion was not accompanied by affidavit and the record is silent as to any proceedings thereon. The order of the Court was endorsed upon the original motion in these terms:

"Motion denied. Defendant permitted to have assistance of Chemist for consultation and trial purposes if he so desires at State's expense."

We are not disposed to construe the Court's order narrowly. The defendant does not and in our view could not properly contend that the consulting chemist, whose employment by the defendant at the State's expense was authorized, could not confer with the State's chemist at the State Laboratory in Augusta, observe his facilities, methods and techniques and by other reasonable and practicable means satisfy himself as to the results of the State's

analysis. What the order denied was the removal of a "sample" of the "substance" from the State's possession. It is precisely this denial which the defendant asserts to have been prejudicial error.

From the trial record we learn that the State took possession by alleged sale of only one tablet of LSD-25. The tests performed on this tablet required the use of $3/4$ of it which was exhausted and destroyed by the procedure. This left $1/4$ of the tablet in existence in the State's possession which was ultimately admitted in evidence as a state's exhibit.[1]

This is the first occasion we have had to consider the intended scope of M.R.Crim. P., Rule 16(a) dealing with "Discovery and Inspection." The text of that paragraph is as follows:

"Upon timely motion of a defendant and *upon a showing* that the items sought may be material to the preparation of his defense *and that the request is reasonable*, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents, or tangible objects, which are within the possession, custody, or control of the state, including written or recorded statements or confessions made by the defendant or a co-defendant, written or recorded statements of witnesses, transcripts of the testimony of witnesses before the grand jury, and *the results or reports* of physical examinations and scientific tests, experiments, and comparisons. The order shall specify *the time, place, and manner* of making the inspection and of taking the copies or photographs *and may prescribe such terms and conditions as are just.*" (Emphasis supplied)

■ The Commentary on Rule 16 in Glassman, Maine Practice, Page 133 et seq.

---

1. At trial this exhibit had significant probative value as its size, texture and especially its color assisted the jury in resolving an issue tendered by the defendant as to whether or not this tablet in its original form was the identical tablet sold to the State's agent.

is particularly helpful. In Sec. 16.1 it is stated, "The basic premise behind Rule 16 is that discovery can have the same beneficial effects in criminal cases that it has in civil actions and should, therefore, be permitted. It can eliminate concealment and surprise; thereby destroying the 'sporting' aspects of a criminal trial. * * * It can eliminate any imbalance which exists between the parties as to the means and ability to secure evidence." We are satisfied that the Rule should be liberally interpreted and applied. There are, however, many practical problems which can arise and which must be dealt with on a case by case basis, and a policy of liberal application does not mean that every specific discovery request made by defendants must or should be granted. The Rule wisely imposes an initial duty on the defendant when his request is lodged. Sec. 16.2 describes that duty in these terms:

"The defendant *must show* that the items sought may be material to the preparation of his defense *and that the request is reasonable.* This requirement precludes a fishing expedition by the defense into the prosecution file, and requires the defendant to show necessity for the inspection. *Something more than a bare allegation* by the defendant or his counsel that the items are material *and the request is reasonable* will be required.[2] * * * Once the necessity has been shown, *if the request is reasonable,* the court *must* order the prosecuting attorney to permit the inspection. It is not a matter of discretion.

* * *

The order of the court shall specify the *time, place and manner* of making the inspection * * *. The court may in addition impose *such conditions and terms* as are just." (Emphasis supplied)

It should be noted that Rule 16(a) does not expressly provide for examination or analysis by an expert. We are in accord, however, with the conclusion reached in Sec. 16.3 wherein it is stated:

"While not express, implicit in Rule 16(a) is the right of the defendant to have such items examined by an expert. Thus, if a gun is material, the defendant should have the right to have a ballistics expert examine the gun and make such tests as may be necessary *under appropriate safeguards.* In such cases, the order of the court permitting discovery *should impose such conditions as are necessary to protect the evidence."* (Emphasis supplied)

The illustration in the Commentary involving the examination of a gun can be expanded. It is not ordinarily very difficult to devise means by which a gun can be examined by defendant's expert "under appropriate safeguards" which will serve to "protect the evidence." After inspection the gun will be returned intact to the State to be used in evidence. A very different practical problem is posed for the Court's resolution when the State has in its possession as evidence a very small quantity of a substance which will be destroyed, exhausted, substantially diminished or chemically altered by chemical analysis. With the great increase in cases involving the unlawful sale or possession of drugs, this becomes a matter of great importance. Obviously, what is "reasonable" in such cases will vary markedly from case to case. So also will the nature of the court orders if the court is to preserve a fair and just balance as between the legitimate interests of the defendant and the practical necessity of protecting and preserving the State's evidence.

---

2. Although F.R.C.P., Rule 16 is unlike our own Rule 16, it does contain the same requirement that the request be reasonable. Several Judges of the United States District Courts have held that the defendant must show that the request is reasonable and a bare assertion to that effect will not suffice. United States v. Smith (1962) U.S.D.C., E.D.Ill., 209 F.Supp. 907, 913; United States v. Telles (1964) U.S.D.C., N.D.Cal., 226 F.Supp. 670, 672.

There is a paucity of precedent in other jurisdictions dealing with the release of State's evidence in the form of "hard" drugs for analysis by defendant's chemist. Moreover, we are satisfied that each case must necessarily rest upon its own facts, particularly with respect to reasonableness of the specific request and the safeguards which may properly be imposed by the Court.

In Jackson v. State (1971–Miss.) 243 So.2d 396 the State had in its possession 12 boxes of matchbox size "filled" with marijuana. The Court, acting not under a Rule but pursuant to its inherent power to provide "due process" and "fair trial," held the refusal of the trial court to make a portion of the substance available to the defendant to be an abuse of discretion. Obviously, the problem facing the Mississippi Court was minimized by the quantity of marijuana available for testing. We do not think that it necessarily follows that the Court would have reached the same result if it had been dealing with a relatively minute quantity of LSD-25 or that the Court would have hesitated to impose a rule of reasonableness in judging the merits of a specific request.

Miller v. Pate (1967) 386 U.S. 1, 87 S. Ct. 785, 17 L.Ed.2d 690 does not address itself to our problem. There is in that case no suggestion that the petitioner for the writ of habeas corpus had requested and been denied an opportunity to have a chemical analysis of stains on a pair of shorts prior to trial. Such opportunity was granted prior to the habeas corpus hearing and the stains were found to be paint rather than blood. Relief was afforded to the petitioner on the ground that the prosecutor knew the stains were caused by paint but unfairly presented them as bloodstains at trial, thus unconstitutionally tainting the conviction. In our view, considering the problems of safe-guarded analysis not present in Miller, we would liken the shorts to the gun used as an illustration in Glassman's Commentary, Sec. 16.3. In such a case the State's evidence can be re-leased for examination and subsequently returned to the State to be available at trial. We have every reason to believe that in our Maine courts requests of this nature have heretofore been liberally granted, the Court's only concern being to assure the safe return of the evidence.

In United States v. Taylor (1960) U.S. D.C., E.D.N.Y., 25 F.R.D. 225 a Judge of the United States District Court dealt with a defendant's request for analysis of Heroin hydrochloride, a derivative of opium. There is no suggestion that the Court was faced with a practical problem as to the quantity of the drug available for analysis. It should be noted, however, that in granting the request the Court provided that "the inspection and analysis be made at the office of the Government Chemist and under Government supervision at a time to be agreed upon." This condition properly reflects the duty of the Court to safeguard the evidence while protecting the defendant's right to inspect.

The case of United States v. Tirado (1958) U.S.D.C., S.D.N.Y., 25 F.R.D. 270 is even less helpful since facts essential for our purposes are not stated. Apparently the Government had in its possession an unstated quantity of "narcotic drugs," the precise nature of which is not revealed by the opinion. In granting defendant's request for analysis the Court stated, "Proper safeguards must be worked out and suggested at the time of the settlement of an order upon this motion." This ruling at least suggests that the Court had in mind the practical application of a rule of reasonableness.

In People v. Perrell (1965) 47 Misc.2d 1024, 263 N.Y.S.2d 640 the Nassau County Court, granting a request to have an independent analysis of marijuana, imposed a similar protective condition that the tests "must be conducted under the supervision of the Police Laboratory and chemists, and the purported narcotics may not be removed from police custody."

With the increasing volume of cases involving the unlawful possession and sale of drugs, we can anticipate that many motions for independent drug analysis will be addressed to the trial courts which, we emphasize, must be considered and decided in accordance with their varying facts on a case by case basis. The preferred practice will be to give prima facie support to the motion by an affidavit of facts tending to show the reasonableness and feasibility of an independent analysis. The defendant may be preliminarily aided by a full disclosure by the State as to the alleged nature and quantity of the substance which came into the possession of the State, the nature and results of tests made by the State and the quantity of the substance still remaining in the State's possession. This information, to which the defendant is justly entitled, will assist the defendant in formulating a request which is reasonable and feasible under the existing circumstances. The use of an affidavit by the defendant will afford the State an opportunity to file a counter-affidavit effectively identifying disputed issues of fact, if any there be, which must be resolved by a hearing on the motion. The trial court should approach the resolution of the problem with a disposition to permit an independent analysis at the State's expense if one is reasonable and practicable under the existing circumstances. Although he is not bound to do so, he may in the exercise of a sound discretion, especially where so-called "hard" drugs are involved, decline to order the sample released from the State's possession and require that the independent analysis be performed at the State's laboratory and/or under the State's supervision. United States v. Taylor, supra; United States v. Tirado, supra; People v. Perrell, supra. He may in circumstances not unlike those existing in the instant case, when he is satisfied that the quantity of substance remaining in the State's possession is not sufficient to permit adequate and accurate testing or that

the remaining substance must be preserved for evidentiary use at trial or that any other valid reason for such action exists, decline to permit any use of the substance for independent analysis. In the latter event the defendant's analyst will of necessity be compelled to limit his investigation to consultation with the State's analyst and an examination of the State's laboratory facilities and testing methods. An abuse of discretion will be shown only when the record discloses an arbitrary refusal to grant a reasonable and feasible request or a reasonable modification thereof. The defendant must bear in mind his obligation to build an adequate record, that being indispensable to appellate review.

In the instant case not only was there an absence of even a "bare assertion" of reasonableness but reasonableness was not supported by either affidavit or proof. We deal only with *the specific request* before us, that is, the release of the drug from State custody, since it is the denial of that request which defendant asserts constituted an abuse of discretion. We conclude that the defendant's motion suffered from overbreadth [3] and lack of supportive proof. No error is shown.

### Evidence of Identity of Drug

The defendant challenges the sufficiency of the State's evidence to prove that the substance sold by defendant was in fact LSD-25. The jury could properly conclude that the witness relied upon by the State, a chemist employed in the State Laboratory, made a chemical analysis of the substance under acceptable laboratory conditions and effectively demonstrated that the tested substance was in fact LSD-25. There was no evidence tending to prove any tampering with the sample by third persons while it was in the custody of the State's chemist—or any breach of

3. The motion sought release of the sample to "Defendant, his attorney or agents."

adequate laboratory standards in the testing procedures. The weight to be given to the chemist's testimony was for the jury.

### Sequestration of Witnesses

■ The State's witnesses were ordered to remain sequestered during trial. Two principal witnesses for the State, Baum and Cartmell, were detectives who participated in buying LSD-25 from the defendant. They were included in the order of sequestration but the Court declined to order that they "be separated at all times during the course of the trial, and not be together until the case is closed." The primary function of sequestration is to prevent one witness from hearing the testimony of another so as to be able to conform his own testimony to that given by the other, especially that given in response to cross-examination. In this case Mr. Baum was the first witness called. Mr. Cartmell did not hear his testimony and was immediately called to testify without any opportunity to confer with Mr. Baum. The rights of the defendant were thus fully protected.

### Verdict Supported by Evidence

■ The defendant seasonably moved for judgment of acquittal and now contends that the verdict was not adequately supported by evidence. We have already reviewed the evidence relating to the identity of the substance as LSD-25. There was in addition ample · credible evidence presented to the jury of a sale by the defendant to Baum and Cartmell. An unlawful sale of LSD-25 was thus proved beyond any reasonable doubt.

The entry will be

Appeal denied.