**STATE of Maine**

v.

**Percy E. SARGENT.**

Supreme Judicial Court of Maine.

July 26, 1976.

David M. Cox, Dist. Atty., Paul Chaiken, Eugene Beaulieu, Asst. Dist. Attys., Bangor, for plaintiff.

Garth K. Chandler, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

In *State v. Cloutier,* Me., 302 A.2d 84 at 86–87 (1973), this court discussed in great detail the intended scope of Rule 16(a), M.R.Crim.P., dealing with discovery and inspection. In that opinion we took great pains to point out that the rule intends that the court may impose appropriate safeguards to protect evidence and that it specifically is authorized to specify the time, place, and manner for making an inspection of evidence in the State's custody under *"such conditions and terms as are just."*

Despite our lengthy dissertation on the subject, we find the issue of the State's obligation under Rule 16(a), M.R.Crim.P., raised again in this appeal.

That issue, and others, are raised in this appeal by this defendant against whom judgment was entered upon a jury verdict of guilty of unlawful sale of marijuana. 22 M.R.S.A. § 2384.

We deny the appeal.

It was the State's claim that the appellant made an unlawful sale of marijuana to an undercover agent of the Penobscot Reginal Special Investigation Unit. The sale is alleged to have taken place on May 22, 1974, at about 4 p. m.

Approximately a month before the trial was scheduled to commence, appellant's counsel sought leave of court under Rule 16(a), M.R.Crim.P., to examine certain records which were in the custody of the Maine State Police and were being retained at the Thomaston police barracks. The court not only granted the motion but also granted a two-week continuance of the trial in order to give counsel time to make the requested examination.

The evidence reveals that the records which appellant sought to examine were records allegedly stolen from a gasoline station at which appellant was employed. The records were being retained by the police as evidence in a criminal proceeding not involving this appellant. The court specified that the inspection could be made but that it had to be made at the police barracks in Thomaston where the records were being kept. Appellant's counsel never availed himself of the opportunity thus afforded.

The issue arose in the trial court in this factual framework: Appellant's former employer was called as a witness. He testified that after appellant's indictment he reviewed his business records to determine whether the appellant was *"on the job that day."* He was asked what the records showed, but the State interposed objection, following which the employer testified that in October, following the appellant's indictment in September, he [the witness] was the victim of a robbery by the appellant's brother, Richard, who took the records from him. The witness stated that the brother, Richard, was at the time of appellant's trial an inmate at Maine State Prison. The records about which he sought to testify, he said, were recovered by State Police officers from Richard Sargent and were at the time of appellant's trial held by the police at the Thomaston barracks as evidence against Richard Sargent.

The appellant's counsel at that point declared he had no more questions of the witness. The court then ruled that the

---

* Weatherbee, J., sat at argument and participated in consultation but died prior to preparation of opinion.

witness could testify to his recollection of what the records revealed. The witness stated, in answer to the prosecutor's question, that his records

"would indicate at best that Percy Sargent was working for [the employer] on this particular day."

The record reveals that just before the trial started, when it came to the attention of the presiding justice that appellant's counsel had not availed himself of the opportunity to examine the records, the court offered a further continuance in order to accomplish the inspection. This offer was refused and the trial proceeded.

Appellant now claims that the circumstances under which the inspection was ordered permitted was an unreasonable restriction upon his right of discovery under Rule 16(a). This rule reads as follows:

"Upon timely motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents, or tangible objects which are within the possession, custody, or control of the state, including written or recorded statements or confessions made by the defendant or a co-defendant, written or recorded statements of witnesses, transcripts of the testimony of witnesses before the grand jury, and the results or reports of physical examinations and sci-

entific tests, experiments, and comparisons. The order shall specify the time, place, and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." [1]

■ The reasonableness of the conditions imposed by the court under which a defendant may examine evidence in possession of the State will obviously vary greatly from case to case. The conditions, if any, to be imposed are left largely to the discretion of the presiding justice. *State v. Cloutier,* supra. In the absence of a clear abuse of such discretion, the court's ruling must stand.

■ In the instant case we find there is no abuse of discretion.

The justice's order placed the records at the appellant's attorneys' disposal in Thomaston. It is clear that the records were voluminous, and it was necessary for the State Police to retain custody of them for use in a pending trial not involving appellant. It was sufficient here that the court ordered the State to make evidence in its possession available to appellant's counsel who could have made the inspection requested through the exercise of reasonable effort.

The conditions imposed were reasonable and not unduly burdensome.

This point raised by appellant in this appeal is without merit.

---

1. Apparently counsel did not file a formal motion for discovery because the presiding justice did not issue a formal discovery order. For some reason the court reporter failed to record the colloquy relating to the grant of discovery and the district attorney and defense counsel were unable to agree on a recreation of that colloquy. Neither party, however, disagreed with the presiding justice's recollection:

"But, I do recall you coming into Court in Bangor and stating that there were certain records that had been taken, I think, in a break from the gas station, or someplace, and they were being held by the State Police on another matter. And that you felt that if you were given an opportunity to inspect them, they would show you something that you could use in your client's defense.

"And I remember we made specific arrangements for that to be done, and the matter was continued. And it was set up that you were going to be allowed to go down and examine those records in full, period.

"I remember saying that they were quite ——— I had been told that they were quite voluminous."

The undercover agent who identified the appellant as the person who sold him the marijuana described the seller as weighing approximately 180 lbs. and being between 5' 10" and 5' 11" tall. The officer also testified that he had been with the seller for only ten minutes on the day of the sale and had never seen him before.

The appellant then presented his former wife as a witness. She testified that appellant was in fact 5' 6" tall and weighed 160 lbs. and that the description given by the State's witness more nearly described the appellant's brother, Richard Sargent. In order to rebut the former wife's testimony and bolster the credibility of its own witness, the State, on cross-examination, offered into evidence a photograph of appellant's brother. The former Mrs. Sargent testified that except for slight variations in hair style and mustache length, the photograph fairly depicted the appellant's brother at the time of the crime.

Appellant now argues the photograph should not have been received into evidence because the time of its taking was not described and that the appearance in the photograph varied slightly from Richard Sargent's appearance at the time of the sale of the marijuana.

The claim is here made that the admission of the photograph was prejudicial error and should result in a new trial being ordered.

We do not agree.

The appellant's identity as the seller of the marijuana was obviously crucial to the State's case. It was the appellant's witness who claimed the description of the seller given by the undercover agent more nearly resembled Richard Sargent than appellant. The photograph was clearly material and germane to the issue. The appellant's witness, the former Mrs. Sargent, had personal knowledge of the subject of the photograph. She verified its accuracy except for minor differences.

The foundation for admission of a photograph into evidence may properly be laid by any witness who knows that it fairly represents what it purports to represent. *State v. Jordan,* 126 Me. 115, 136 A. 483 (1927). Despite the slight difference in hair and mustache length about which the witness had testified, the trial justice acted properly when he concluded that the photograph would aid the jury in its deliberations. A trial justice is allowed wide latitude in admitting or rejecting photographic evidence. *State v. Berube,* Me., 297 A.2d 884 (1972).

We have carefully examined the record, and we are unable to find that there was abuse of discretion by the justice below.

The third issue raised by this appeal merits only brief discussion.

In attempting to elicit from the undercover agent a description of the person who sold him the marijuana, appellant requested the officer's handwritten notes of the event. The court was recessed while the notes were obtained and defense counsel was given an opportunity to study the report and use it in his cross-examination of the witness. The notes were so used and then were offered into evidence by the State.

Although he did not object at the time, the appellant now claims it was prejudicial error to allow the report he requested into evidence *as a State exhibit.*

It is clear that appellant's counsel examined the report in the hope of finding inconsistencies between the witness' testimony in court and his report written shortly after the alleged crime occurred. There were no such inconsistencies.

The appellant did not choose to offer the written report into evidence, so the State did so. The appellant now argues that had the jury found any discrepancy between the report and the testimony, the appel-

lant's potential advantage from this inconsistency would have been nullified by the marking of the report as "State's evidence."

The appellant's failure to object to the admission into evidence of the report requires us to examine the issue only to determine whether there is error discernable in the record *so highly prejudicial to the appellant that it virtually deprives him of his right to a fair trial. State v. Langley,* Me., 242 A.2d 688 (1968).

It is apparent that no prejudice at all occurred.

The claimed error relates to a purely hypothetical set of facts. Appellant's claim in this regard is frivolous.

The entry must be:

Appeal denied.

All Justices concurring.