STATE of Maine

v.

Armand SAMSON.

Supreme Judicial Court of Maine.

Dec. 13, 1976.

County for the unlawful sale, on October 10, 1973, of Cannabis to two undercover police officers in violation of 22 M.R.S.A., § 2384.[1] Found and adjudicated guilty, after a jury-waived trial, of said offense of unlawful sale of Cannabis, the defendant was sentenced to a term in Maine State Prison of not less than 2½ years and not more than 5 years. Samson appeals this conviction to this Court and we deny the appeal.

I

■ The defendant claims that he was denied effective pre-trial discovery constituting reversible error. We disagree. In response to his motion to appoint a suitably qualified expert witness to assist him in the preparation and presentation of his defense and upon his suggestion that Professor John Neumeyer of Northeastern University, Boston, Massachusetts, be so selected, the Court below granted the motion, but the order appointing Professor Neumeyer to perform an independent analysis of the relevant contraband circumscribed the expert's scientific tests as to time, place and manner of examination to which the defendant objects for the first time in this appeal. He now says that the purport of his motion was not to secure an independent analysis of the contraband, but, rather, to obtain the services of an expert consultant to help in the preparation of the defense and in its adequate and knowledgeable presentation at trial. Furthermore, he asserts that the conditions imposed by the order which required the expert to make his findings available to the State's attorneys prior to trial constituted mandatory reverse discovery in favor of the State and as such was an illegal stricture on his discovery rights.

Thomas E. Delahanty II, Dist. Atty., Coleman G. Coyne, Jr., Herbert Bunker, Asst. Dist. Attys., Auburn, for plaintiff.

John L. Hamilton, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The defendant, Armand Samson, was indicted by the grand jury in Androscoggin

* WEATHERBEE, J., sat at argument and participated in consultation, but died prior to preparation of opinion.

1. 22 M.R.S.A., § 2384.

"Whoever sells, exchanges, delivers, barters, gives or furnishes or possesses with intent to sell, exchange, deliver, barter, give or furnish Cannabis, Mescaline or Peyote, to any person shall upon conviction thereof be punished by a fine of not more than $1,000 or by imprisonment for not more than 5 years, or by both, for the first offense; . . .."

It is true that, in *State v. Cloutier*, 1973, Me., 302 A.2d 84, at page 85, this Court adverted to a defendant's legitimate interests in securing the services of an expert for the purpose of having an examination and analysis of contraband material. Although recognizing that such discovery through the availability of an expert and that such inspection rights were not expressly provided in Rule 16(a), M.R.Crim. P., we did agree that such type of relief was implicit within the spirit of the rule. But we indicated that, in the case of hard drugs, discovery orders should be so fashioned by the Court as to protect and preserve the State's evidence, the nature of the safeguards to be imposed in said orders to be determined on a case by case basis.

The reasonableness of the conditions set by the court under which a defendant may obtain expert examination and analysis of the State's evidence consisting of alleged contraband substances will obviously vary from case to case. *State v. Sargent*, 1976, Me., 361 A.2d 248.

But the burden is on the defendant to build an adequate record, an indispensable prerequisite to appellate review. *State v. Cloutier*, supra, at page 89. In the instant case, neither the claimed inappositeness of the relief granted, nor the offensive restrictive nature of the discovery order was brought to the trial Court's attention, since no objection was made to the form of the discovery order. The defendant's assertion of error in this regard is being raised for the first time in this appeal.

Rule 51, M.R.Crim.P. requires a party to make known to the court at the time of an order any objection he may have to the action of the court and his grounds therefor.

Failure to do so must be considered as trial strategy and a waiver by the accused of any objection respecting the judicial action involved. See *State v. Rowe*, 1968, Me., 238 A.2d 217, 225; *State v. Chaplin*, 1973, Me., 308 A.2d 873, 875.

■ Treating these points on appeal under the possible obvious-or-manifest-error concept pursuant to Rule 52(b), M.R. Crim.P., we find that the defendant would not be entitled to any relief. The record unequivocally reveals that the defendant's non-use of Professor Neumeyer's services in no way resulted from the form of the relief ordered by the Court, but, rather, from strategy after realization that Professor Neumeyer's testimony would be of no value to the defense. Also, the record discloses that the defendant never in fact had to make available to the State results of any test performed by Professor Neumeyer as ordered by the Court. Thus, the record affirmatively negates any "serious prejudice tending to produce manifest injustice" by reason of the Court's order of which the defendant presently complains. *State v. Donovan*, 1975, Me., 344 A.2d 401, 407.

## II

The defendant made a motion to the trial Court for acquittal on the ground the State had failed to prove beyond a reasonable doubt that the particular substance, which Samson was charged with selling and which he did sell, was part of the cannabis plant proscribed by 22 M.R.S.A., § 2384, and was not part of the cannabis plant expressly excluded in the statutory definition provided by 22 M.R.S.A., § 2382(1).[2] The Court below acted properly in denying the motion.

2. 22 M.R.S.A., § 2382(1).
   "'Cannabis,' sometimes called marijuana or marihuana, includes all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin; but shall not include the mature stalk of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, or any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalk, except resin extracted therefrom, fiber, oil or cake, or the sterilized seed of such plant which is incapable of germination.
   'Cannabis' shall be taken to include any synthetic substitute for such substance or any salts, compounds, derivatives or preparations thereof."

In *State v. Alley*, 1970, Me., 263 A.2d 66, we referred to the statutory definition of cannabis under 22 M.R.S.A., § 2382 as well as to its identical definition under 22 M.R.S.A., § 2361 (the latter having been repealed in 1969), and agreed that

"cannabis sativa L. is the botanical name of a plant, portions of which, excluding the mature stock, have narcotic quality. . . . The narcotic quality exists in a resin (cannabin, cannabinon) and a volatile oil (cannabinol) within the leaves and flowering tops (cannabis) of the plant;"

that

"[b]y scientific definition the 'leaves and flowering tops' are both cannabis and marijuana, and cannabis by statutory definition is a narcotic drug;"

that

"[t]hese definitions and the synonymity of cannabis and marijuana have been recognized in law."

■ The statutory proscription of 22 M.R.S.A. § 2384 brings within its scope the sale of cannabis as defined in 22 M.R.S.A., § 2382(1). By express definitional provision, the Legislature has denounced as contraband, on a par with the plant cannabis itself, "the resin extracted from any part of such plant," and, when it excluded the mature stock of such plant from the ban of the statute, it purposely excepted from the excluded mature stock the resin extracted therefrom, thus keeping such resin within the prohibited material. We must conclude that any part of the plant cannabis from which resin may be extracted is within the scope of the statute prohibiting its sale, as much so as the resin itself once extracted, the embodied resin supplying that portion of the plant with its narcotic characteristic. By the reference statute, the Legislature intended to outlaw such anodynic substances.

■ The State's evidence on the identity of the substance in question came from Thomas Dwyer, a chemist employed by the Department of Health and Welfare at the public health laboratory in Augusta, Maine. The reasonable conclusion to be gathered from his testimony when considered in its entirety does support beyond a reasonable doubt that the plant material which he examined and tested and which was introduced in evidence, having on its leaves, as he testified, tiny cystolith hairs characteristic of cannabis and containing cannabis resins as his tests demonstrated, was in fact part of the cannabis plant statutorily proscribed and not part of the plant exempted by the statute.

Mr. Dwyer performed several tests in his analysis of the substance at hand. His initial examination consisted of a microscopic examination of the material which disclosed the tiny cystolith hairs off the leaf part of the plant. His subsequent testing of the cystolith part of the plant fiber with hydrochloric acid, which in this case caused effervescence, narrowed his choice of identification toward cannabis. The modified Duquenois test was then used whereby the chemist was able to isolate in the lower layer of the test tube the pinkish color which cannabis alone will produce. The modified Duquenois method has been recognized as a standardized chemical procedure by this Court in *State v. Carvelle*, Me., 1972, 290 A.2d 190. The further analysis of the resin extracted from the plant material in the thin layer chromatography test matched the results obtained from the conduct of the same test upon a known cannabis standard. Mr. Dwyer's opinion that the substance at issue was cannabis supports the defendant's guilt of selling the proscribed cannabis in violation of 22 M.R.S.A., § 2384 beyond a reasonable doubt.

■ The State's expert testified that, during the period of three years, he had performed over thirteen hundred (1300) tests

in identifying the plant cannabis and that he gave testimonial evidence in court in relation thereto approximately one hundred times. When an expert makes use of established chemical procedures with which he has become familiarized by training and experience, the weight of his testimony identifying the analyzed substance as cannabis is for the trier of facts to assess. *State v. Donovan*, 1975, Me., 344 A.2d 401, 404.

The entry will be

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.