**STATE**

v.

**John A. FARAONE.**

No. 78–306–C.A.

Supreme Court of Rhode Island.

Feb. 6, 1981.

Dennis J. Roberts II, Atty. Gen., Charles M. Nystedt, Sp. Asst. Atty. Gen., for plaintiff.

Aram K. Berberian, Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

The defendant, John A. Faraone, was convicted in the Superior Court for the delivery of a controlled substance (marijuana) to an undercover police officer. The defendant has appealed from said judgment and, in support of his appeal, raises a single issue relating to the denial of his motion for discovery. The facts which are pertinent to this issue are as follows.

The information that charged this offense was filed on May 5, 1978. On May 11 defendant filed a timely motion for discovery in which the following specific request was made:

"Now comes the defendant in the above entitled cause and moves that the prosecution deliver to defense counsel a sample of the controlled substance out of which the information issued for the purpose of the defendant analyzing same for identification."

On May 12 defendant appeared for arraignment. At the same time another defendant represented by the same attorney was arraigned on a companion charge. In respect to the companion case, defense counsel, in a somewhat jocular vein, without any buttressing argument, made the following terse statement after the assistant attorney general had called the court's attention to the discovery motion. "Right. [W]e want a sample of marijuana for our own use—strike that. For our own analysis." No mention was made either in the motion or in argument of the identity of the expert who would be used for the analysis, the place of the test, or any safeguards to be applied. The attorney for the prosecution raised an objection to the delivery of such a sample unless it was subject to court control. The trial justice, apparently not certain of the seriousness of the request, posed this question:

"You serious about it [sic]? You want some of that sample?"

Defense counsel replied,

"Right. I want—we want to analyze it. And we also want a writ of protection so we won't be arrested while analyzing it. See, this puts the court on a dilemma."

Thereupon, the court denied the motion without further comment. The foregoing colloquy took place in respect to the discovery motion in the companion case, not the instant case. However, counsel for defendant made the same request immediately thereafter in the case at bar asserting in support thereof the phrase "Same argument." On this record defendant asserts a denial of his right of due process.

In aid of this analysis, he cites *State v. Hanson*, S.D., 278 N.W.2d 198 (1979), and *People v. Taylor*, 54 Ill.App.3d 454, 12 Ill. Dec. 76, 369 N.E.2d 573 (1977). In the former case the Supreme Court of South

Dakota held that "where doubt exists as to whether an independent test of an alleged contraband substance is material and exculpatory * * *, the defense must be given an opportunity to have an independent determination made." *State v. Hanson*, S.D., 278 N.W.2d at 200. In the latter case it was held to be a denial of due process for the state to consume virtually all of the controlled substance which was the basis of the charge in an unnecessary quantitative test[1] that prevented the defendant from having the opportunity for an independent analysis. *People v. Taylor*, 54 Ill.App.3d at 456, 12 Ill.Dec. at 79, 369 N.E.2d at 576.

The basis for the due-process analysis arises out of the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which it was held that the failure of the prosecution to disclose evidence that would be exculpatory or favorable to the accused constituted a denial of due process. This doctrine has been reasserted and further defined in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In the case at bar there is not the slightest suggestion or scintilla of evidence that an examination of the controlled substance would have produced evidence exculpatory to defendant. Indeed, at the trial of the case, counsel for defendant did not even require that the state toxicologist testify. He stipulated to the expertise of the witness and that his testimony would show that "he analyzed the substance in question, and that as an expert toxicologist, his analysis showed that the substance, the greenish-brown material—the result was that the material contained positive cannabis marijuana." Counsel thus did not even avail himself of the opportunity to cross-examine

this witness, though he made a vague general objection to the denial of his motion for analysis and to the relevance of the toxicologist's discipline. He did not accompany this objection with any argument, assertion, or offer of proof in respect to the inadequacy of the sphere of discipline of the state's expert witness or the accuracy of the tests. Thus, there is utterly nothing in the record from which an inference might be drawn that the analysis by the state's expert was inadequate, incorrect, or even subject to a reasonable doubt. Consequently, we feel that the due-process doctrine in this instance is wholly inapplicable.

Although not raised by defendant in his brief, we feel constrained to observe that a more serious question is posed regarding the right to discovery under Rule 16(a) of the Superior Court Rules of Criminal Procedure. This rule provides for extensive discovery on the part of a defendant in a criminal case going far beyond the requirements of due process.[2] Specifically Rule 16(a)(5) grants a defendant the right to inspect, "subject to an appropriate protective order under paragraph (f), any tangible objects still in existence that were the subject of such [scientific] tests or experiments." The commentary in explanation of this rule suggests:

"The purpose of this provision is, where possible, to assure to the opposing side an opportunity to have its own tests done on a physical object (e. g., a gun, a blood-stained garment, etc.) that is involved in the case. To protect against loss or alteration of the object, discovery is made 'subject to an appropriate protective order under paragraph (f)' of the rule." Super.R.Crim.P. 16, rptr's notes at 432.

Thus, it seems apparent that subject to appropriate safeguards, a defendant may examine a substance or article, or other

---

1. In that case the court held that the concentration of the controlled substance was irrelevant to the charge and therefore the quantitative test was unnecessary. *People v. Taylor*, 54 Ill.App.3d 454, 456, 12 Ill.Dec. 76, 79, 369 N.E.2d 573, 576 (1977).

2. The Supreme Court has carefully pointed out that the doctrine that requires disclosure of exculpatory material to the defense does not create the right to discovery on the part of a defendant in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

tangible object, which has been the subject of a scientific test or examination by an expert witness for the state. A similar issue was confronted by the Supreme Judicial Court of Maine in *State v. Cloutier*, 302 A.2d 84 (Me.1973). That court, after noting precedents in other jurisdictions,[3] construed its discovery rule impliedly to allow such examination when the defendant makes a "prima facie support to the motion by an affidavit of facts tending to show the reasonableness and feasibility of an independent analysis." *Id.* at 89. The court went on to recommend that trial judges, in the exercise of sound discretion, might order such an analysis but as a safeguard could provide that it be performed at the state's laboratory and/or under the state's supervision. The court also provided that such a request for analysis might be denied if the quantity of substance remaining in the state's possession was not sufficient to permit adequate and accurate testing or in the event that the remaining substance must be preserved for evidentiary use at trial. The Supreme Judicial Court went on to suggest that in such circumstances

> "the defendant's analyst will of necessity be compelled to limit his investigation to consultation with the State's analyst and an examination of the State's laboratory facilities and testing methods. An abuse of discretion will be shown only when the record discloses an arbitrary refusal to grant a reasonable and feasible request or a reasonable modification thereof. The defendant must bear in mind his obligation to build an adequate record, that being indispensable to appellate review." *Id.* at 89.

The *Cloutier* court examined the defense request before it, which did no more than to seek "the release of the drug from state custody" to the defendant, his attorney or agents. *Id.* at 86. The court concluded that the defendant's motion suffered from overbreadth and was properly denied.

■ Under Rhode Island Rule of Criminal Procedure 16(a)(5), we think that a similar rule of reason should be applied. A defendant who desires to analyze an article or substance should file a motion setting forth the circumstances of the proposed analysis, the identity of the expert who will conduct such analysis, his qualifications, and scientific background. The court may then, in its discretion, provide for appropriate safeguards, including, where necessary, the performance of such tests at the state laboratory under the supervision of the state's analyst. Because of the breadth of our criminal discovery rule, the defendant need not file an affidavit setting forth factual cause for proposing such analysis so long as the substance or article is a relevant and material element in the state's case.

■ Measured by the foregoing principles, the request for delivery of the controlled substance in the case at bar to defense counsel suffered from the same infirmity as did the request in *State v. Cloutier*, *supra*. No expert witness was identified and there was no outline of the circumstances and conditions under which the test was proposed to be performed; consequently, this request for delivery also suffered from overbreadth. Although the trial justice could have in his discretion required counsel to expand upon this sketchy offering and provided for the necessary safeguards, it was not an abuse of discretion simply to deny the motion in the context in which it was presented.

For the reasons stated, the appeal is denied and dismissed, the judgment of conviction is affirmed, and the case may be remanded to the Superior Court.

**3.** *United States v. Taylor*, 25 F.R.D. 225 (E.D.N.Y.1960); *United States v. Tirado*, 25 F.R.D. 270 (S.D.N.Y.1958); *Jackson v. State*, 243 So.2d 396 (Miss.1971); *People v. Perrell*, 47 Misc.2d 1024, 263 N.Y.S.2d 640 (1965).