STATE

v.

Calvin PARKER, Jr.

No. 83–158–C.A.

Supreme Court of Rhode Island.

March 13, 1984.

## OPINION

SHEA, Justice.

The defendant, Calvin Parker, Jr., appeals his conviction in the Superior Court of the crimes of robbery and leaving the scene of an accident. He challenges the validity of the victim's eyewitness identification, the limitation of cross-examination by the trial justice, and the sufficiency of the jury instructions. We affirm.

On July 24, 1979, Maria Kattke was working at a gift shop in the city of Central Falls. At approximately 11:30 a.m., a man whom she recognized from a previous visit entered the shop. After speaking with Kattke, he browsed around the store for about five minutes while she worked behind the counter. He then grabbed her from behind and held a sharp object to her neck. She struggled with him and then was thrown to the ground. During the struggle, Kattke received slash wounds to her neck and right hand. The man emptied the shop's cash drawer of approximately $65. He took her into the back room and shut her in the bathroom. Upon hearing the buzzer signaling that the front door had opened, she left the bathroom and went to the front of the store. She saw the man get into the driver's side of a car that had been parked outside and drive away. Kattke was subsequently taken to the hospital where she received approximately thirty stitches.

Kattke described the robber to the police as approximately thirty years old, six foot three inches to six foot four inches tall, slim in build, clean-shaven,[1] and wearing a light-colored hat with a wide brim, a black flowered shirt, tan trousers, and a chain and medallion around his neck.

On the same day as this robbery, Nancy Robichaud was involved in a car accident with a man who fit the description of the robber. The man came up to Robichaud's

Dennis J. Roberts II, Atty. Gen., William P. Rampone, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief Appellate Division, Janice M. Weisfeld, Asst. Public Defender, for defendant.

---

1. At trial, Kattke explained that she meant "very well groomed, very neat in appearance * * * not long straggly hair or gruffy looking."

car and asked if anyone was hurt. He then got back into his car, drove up the street a short way, got out of the car, and headed off on foot. Approximately two weeks after the accident, Robichaud was shown a book of photographs that included a picture of defendant. She identified defendant as the individual involved in the accident.

On the night of the robbery, the police showed Kattke a photograph that they obtained from a wallet they found in the abandoned car that was involved in the accident with Robichaud. The photograph was of defendant and a woman apparently at their wedding. Kattke tentatively identified defendant as the individual who had robbed her.

On July 29, 1979, Kattke viewed eight to ten books containing mugshots. She did not identify anyone. The defendant's picture was not included in any of these books. On August 1, 1979, Kattke identified a picture of an individual who she said resembled defendant but was not him.

On the morning of August 3, 1979, Kattke was shown a group of eight photographs. A photograph of defendant that had been obtained from a police department in New Jersey was included in this photo array. Kattke identified defendant as the man who had robbed her.

The police arrested defendant on August 3, 1979 at his attorney's office after receiving a call from the attorney that his client had been involved in a hit-and-run accident and wanted to surrender. After being transported to the police station and informed that he would have to wait before the police obtained enough people to conduct a lineup, he requested that the police arrange a one-on-one confrontation between him and Kattke. At the confrontation, Kattke identified defendant as the robber although she stated that he appeared to be shorter than she remembered the robber to be. A few days later Kattke went to the police station to give the reason she believed explained the height discrepancy. She informed the police that on the day of the crime she had been wearing flat shoes and the robber high-heeled ones. In contrast, on the day of the identification, she was wearing three- to four-inch heels whereas defendant was wearing sneakers.

At trial, defendant testified that he had been a customer at that gift shop on three different occasions. He testified that on July 24, 1979, he was in his car with a friend who was driving. He stated that his friend pulled into the parking lot near the gift shop and went into a store, leaving defendant behind. The friend then got back into the car and told defendant that he had just robbed the woman in the gift shop. He sped away and within minutes collided with the car driven by Robichaud. The defendant testified that after the accident his friend lay sprawled across the back seat of the car. The defendant got out of his car and asked if anyone in Robichaud's car was hurt. He then returned to his car, drove it up the street, stopped, and fled on foot. He told the jury that his friend wore clothing that day matching the description of that worn by the robber which was given by Kattke.

At trial, Kattke identified defendant as the man who had robbed her on July 24, 1979, and Robichaud identified him as the man who was involved in the car accident that same day. The jury found defendant guilty of robbery and of leaving the scene of an accident, and defendant appealed.

I

■■■ The defendant claims that the procedures used by the police in the identification process were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. He asserts that the showing of a single photograph to the victim on the night of the robbery and the showing of defendant singly to her after his arrest gave rise to unconstitutional identification procedures. The practice of showing suspects to persons either singly in photographs or singly in person for the purpose of identification, and not part of a lineup, has been widely condemned. *Stovall v.*

*Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967).[2] The show-up procedures are suggestive because the police in effect say, "This is the man." *See Biggers v. Tennessee,* 390 U.S. 404, 407, 88 S.Ct. 979, 981, 19 L.Ed.2d 1267, 1269 (Douglas, J., dissenting), *reh. denied,* 390 U.S. 1037, 88 S.Ct. 1401, 20 L.Ed.2d 298 (1968). However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances, *Stovall v. Denno, supra,* and a determination that the identification lacks independent reliability despite the suggestive nature of the procedures used. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *State v. Nicoletti,* 471 A.2d 613 (R.I., 1984). To determine whether the pretrial identifications were independently reliable, the following factors should be considered:

" * * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

We turn then to a brief review of the facts of this case as they pertain to each of these five factors.

### A. Opportunity to View the Perpetrator at the Time of the Crime

Kattke spoke with the robber when he entered the shop, and he browsed around inside the shop for about five minutes. He was not wearing any mask or other covering on his face. When she was dragged into the back room, she was face to face with the robber and was not more than a foot away from his face while they strug-

gled. She again saw the man as he got into his car and drove away.

### B. Witness's Degree of Attention

The perpetrator was the only person in the store at the time of the incident, thereby allowing her to direct her full attention toward him. Also, she directed her attention toward the fleeing man in an attempt to identify the car and the perpetrator.

### C. Accuracy of Prior Description

Kattke described her assailant on the day of the robbery as approximately thirty years old, six foot three inches to six foot four inches tall, slim in build, and wearing a light-colored hat with a wide brim, a black flowered shirt, tan trousers, and a chain with a medallion around his neck. The defendant is slightly under six foot tall but otherwise appears to fit the description that Kattke gave of the robber. Her description of the robber as "clean-shaven" was incorrect. The defendant had a full beard on the day of his arrest, ten days after the incident. She explained this misuse of terms, however, by stating that by clean-shaven she had meant well groomed and neat in appearance.

Despite this contradiction, the description of the robber appears to fit defendant's actual physical appearance. The height is within a few inches, the age is correct within a year, and the description of the build of the robber appears to fit that of defendant.

### D. Level of Certainty Demonstrated by the Witness

Kattke had three occasions before trial to identify defendant. On the night of the robbery she stated that the picture of defendant resembled the robber but that if it was him, it must be a picture of him when he was younger. The picture in fact was an old picture of defendant.[3] On the morning

---

**2.** *See* Frankfurter, *The Case of Sacco and Vanzetti,* 31–32 (1927); Taylor, *Eyewitness Identification,* 102–04 (1982); Wall, *Eye-Witness Identification in Criminal Cases,* 28 (1965).

**3.** The picture used on the night of the robbery showed defendant without a beard. On the night of his arrest he had a full beard, and therefore, it is assumed that the picture was old.

of August 3, 1979, Kattke unequivocally identified defendant's picture from a photographic array. Finally, later that day in the one-on-one confrontation requested by defendant, Kattke identified him even though she stated that he appeared shorter than she remembered him to be.

### E. Time between Crime and Confrontation

Kattke first identified defendant on the night of the robbery. The other two identifications were within ten days of the crime. The time lapse between the crime and the confrontation was small. In *Neil v. Biggers,* 409 U.S. at 201, 93 S.Ct. at 383, 34 L.Ed.2d at 412, the Court held that a seven-month lapse between the crime and the confrontation between the victim and defendant was acceptable because of the victim's record of reliability in the identification. In comparison, the ten-day lapse in the present case is relatively minor. Further, Kattke has a record of consistent reliability in her identification.

■ Considering all of these factors, we conclude that the identification of defendant was independently reliable. Kattke's opportunity to view the perpetrator with maximum attention coupled with the accuracy and certainty of the identification after a short period of time had elapsed demonstrate that her identification of defendant as the robber is highly reliable. It is therefore nonviolative of defendant's due-process rights despite the fact that the procedures used could be considered prejudicially suggestive in other circumstances.

### II

■ The defendant's second claim of error is that he was denied his constitutional rights to present a defense and to confront and cross-examine his accusers because he was not allowed to question the police witness about whether fingerprints were found at the scene of the crime. Exclusion of such evidence is not reversible error unless the trial justice abused his discretion, thereby causing substantial injury to the party

seeking its admission. *State v. Benevides,* R.I., 420 A.2d 65, 69 (1980); *Gaglione v. Cardi,* 120 R.I. 534, 538, 388 A.2d 361, 363 (1978).

■ One threshold question in determining if certain evidence should be admitted is whether it had probative value. The evidence is probative if it has any tendency to make the existence of any relevant fact more probable or less probable than it would be without the evidence. *Capezza v. Hertz Equipment Rental Corp.,* 118 R.I. 1, 6–7, 371 A.2d 269, 272 (1977). The fact that the police did not dust for fingerprints is not probative of any relevant or material issue. There is no evidence in this case that this testimony would have resulted in any exculpatory or impeaching evidence. *See State v. Pemental,* R.I., 434 A.2d 932, 936 (1981); *State v. Faraone,* R.I., 425 A.2d 523, 525 (1981). There is no offer of proof by defendant that the police did dust for fingerprints and found none or found some other than those of defendant. The trial justice therefore properly prohibited defendant from pursuing this line of questioning of the police witness.

### III

■ The defendant's final issue concerns the sufficiency of the trial justice's jury instructions on the crimes of robbery and leaving the scene of an accident. The defendant failed, however, to object to the charge. A timely objection to the charge is essential to preserve the claim of error. *State v. Tillinghast,* R.I., 465 A.2d 191, 198 (1983); *State v. Ballard,* R.I., 439 A.2d 1375, 1388 (1982); *State v. Williams,* R.I., 432 A.2d 667, 669 (1981); Super.R.Crim.P. 30. Only then can the trial justice be alerted to the deficiency in the charge and have the opportunity to correct it if it is necessary to do so. In this case, the defendant did not object to any portion of the charge given to the jury by the trial justice. The alleged error in the instructions is therefore not properly before this court on appeal.

For these reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court for further proceedings.