DECISION
Before this Court is Plaintiffs' (Gray Plaintiffs) request to release tangible evidence for the use of scientific testing.[1] The Gray Plaintiffs request the Court to order the release of additional foam (incident foam) in the State of Rhode Island's (State) possession; the incident foam was confiscated from the basement of "The Station," a nightclub formally located in Warwick, Rhode Island. The Station nightclub was the scene of one of the most tragic fires in this Nation's history. On February 20, 2003, a pyrotechnic display allegedly ignited a fire within The Station, which spread throughout the club, and resulted in the death of one hundred people inside and the injury of others.
In response to the tragedy, a grand jury indicted the two nightclub owners, Michael and Jeffrey Derderian, and the Tour Manager of the Great White band, Daniel Biechele ("Defendants"). In addition to this criminal component, approximately 250 plaintiffs have consolidated their claims against over fifty defendants in the District Court of Rhode Island, seeking civil recovery for their losses. Gray v. Derderian, No. 04-3121L, 03-483L, 2005 U.S. Dist LEXIS 28535 (D.R.I. Nov. 9, 2005). Plaintiffs in the civil case represent the interests of survivors, victims, and their families. See Passa v.Derderian, 308 F. Supp. 2d 43 (D.R.I. 2004).
The incident foam is relevant to issues in both the civil and criminal cases.[2] The incident foam was allegedly not adequately flame resistant for what it was used for in The Station. As such, determining the characteristics of the incident foam and its impact on the fatalities and injuries is material in both the civil and criminal proceedings. Plaintiffs in the civil case are especially interested in testing the foam to determine what company manufactured the foam; the State and the criminal defendants are interested in the foam to determine its chemical properties for use in the prosecution and/or defense of the criminal case.
The State has labeled the sheets of foam using alphabetical letters A through J. This Court has previously transferred four square feet of incident foam to the District Court in response to an earlier civil request for testing; the four square feet apparently came from four foam sheets labeled A through D. The Gray Plaintiffs now request one square foot from foam sheets E through J, or a smaller piece if a particular sheet is not large enough. The Gray Plaintiffs do not identify any facts that would indicate that the samples from sheets A through D would be different in characteristics or manufacture than samples E through J.
Unfortunately, the amount of foam taken from The Station is extremely limited. Because of this fact, this Court has ordered that any party seeking testing of the foam obtain permission from the Court to perform destructive testing in order to preserve the foam. The Court has received testing requests by the Defendants in the criminal case to conduct destructive testing on the foam. Granting the Defendants' requests for foam testing would effectively deny the Gray Plaintiff's request, as the amount needed to perform those tests would leave only enough form for the State to present evidence at trial. What would remain would be a marginal amount left over from the larger pieces, and the small miscellaneous pieces of foam contained in the so-called "box of scraps." The Defendants requested a total of seventy square feet of incident foam for destructive scientific testing and the State requested one square foot of foam for trial purposes. The criminal parties have already substantially conserved the incident foam by agreeing to a stipulation to use exemplar foam for the purposes of the State's test (the Steiner Tunnel Test) which would have required approximately forty-eight square feet of foam. Regrettably, no further agreement could be reached by the parties.
This situation presents the Court with a Solomon-like decision of how to divide the foam among the many competing interests. The Rhode Island Superior Court Rules provide for extensive discovery on the part of a criminal defendant, and allows for the defendant to inspect tangible objects and conduct tests or experiments on such evidence in a fashion approved by the judge. R.I. Super. R. Crim. P. 16. The court may grant such requests by a defendant, and provide for suitable safeguards when appropriate and feasible, and also may deny a defendant's request, as long as the court does not abuse its discretion. State v. Farone,425 A.2d 523, 526 (R.I. 1981).
This Court recognizes the importance of the civil suit in progress in the Rhode Island District Court. The civil system's ability to provide victims with recovery in the face of such tremendous tragedy serves an extremely valuable function in our society. The Court is tremendously sympathetic to the losses that so many endured as the result of the fire. "Justice is meted out in both civil and criminal litigation." Driver v. Helms,402 F. Supp. 683, 685 (D.R.I. 1975).
However, the Court also recognizes that the priority given to the public interest in law enforcement should be given "substantial weight" over competing civil interests. Id. at 685 (even after the District Court applied "substantial weight" to the concerns of the criminal proceedings, the facts and circumstances did not justify staying the civil proceedings.) Keeping in mind the value of a fair criminal trial, this Court cannot ignore the consequences that would result if the Gray Plaintiff's foam request was granted. The Defendants in the criminal proceeding have not been given any foam previous to this decision. They have therefore had no opportunity to test and record the scientific data needed to rebut the State's allegations of the dangerous nature of the foam.
This Court believes the Defendants' request to be relevant and material to the State's case against the Defendants. See Statev. Faraone, 425 R.I. 523, 526. The Derderian Defendants seek to rebut the State's allegation that the foam's characteristics were dangerous enough to add to the alleged criminal negligence or to create the proximate cause link between the misdemeanor and the deaths. Defendant Biechele requested only five square feet; the test(s) could uncover data that would support his contention that the foam was of such a dangerous nature as to constitute an intervening cause that would break the chain of causation between his allegedly criminally negligent or unlawful actions and the resulting deaths. The Defendants' need for the foam relates directly to the criminal charges they face, and the facts are such that the tests might result in data that would prevent the Defendants of being convicted of the crime of manslaughter. Manslaughter carries a serious penalty of imprisonment, not exceeding thirty years. G.L. 1956 § 11-23-3. This Court can not take denial of the opportunity to establish a viable defense lightly when the penalty for conviction is so great.
The Criminal Defendants have provided detailed ex parte motions specifying the nature of the tests and who will perform the requested tests. Upon reviewing those tests, the Court believes that the requests to test the foam are reasonable in nature. In the discretion of this Court, the Gray Plaintiffs' request for additional foam is hereby denied at this time, as the Court finds the Criminal Defendants' interests to be paramount when considering the facts and circumstances surrounding the criminal case. As a result, the majority of the available foam found will go to the Defendants.
In an effort to assist the Gray Plaintiffs in prosecuting the civil side of the case, the Court orders the State to release the small pieces of foam ("box of scraps") to the District Court for further distribution as the District Court feels appropriate. The Court further reiterates the protective order for foam preservation remains in effect on any foam not specifically ordered to be released by this Court. After the Defendants' testing is completed, the Civil Plaintiffs may be able to motion this Court for any remaining pieces currently in the State's possession that have not been consumed in the testing process.
[1] The Court received a letter from "Plaintiffs' Steering Committee," signed by eight civil attorneys on behalf of the "Gray Plaintiffs." The Court treats this letter as a motion, as the letter requests the Court to order addition foam be released to the District Court.
[2] The State has represented that there is approximately 75.57 square feet of incident foam, not including a box of small pieces ("box of scraps") (Incident Foam Summary, September 19, 2005).