MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 22
Docket:      Cum-22-177
Argued:      January 12, 2023
Decided:     March 30, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

STATE OF MAINE

v.

LAWZ R. LEPENN

JABAR, J.

[¶1]  Lawz R. Lepenn appeals from a judgment of conviction entered by the trial court (Cumberland County, *MG Kennedy, J.*) convicting him, after a conditional guilty plea, of one count of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D) (2018),[1] and two counts of criminal forfeiture, 15 M.R.S. § 5826 (2018).[2]  Lepenn contends that the court erred when it denied (1) his motion to suppress and (2) his request for additional discovery relating to the State's cooperating defendant.  We affirm the trial

---

[1]  This paragraph was amended after the commission of the crime.  *See* P.L. 2021, ch. 396, § 4 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 1105-A(1)(D) (2022)).

[2]  This statute has been amended twice since the date of the crime.  *See* P.L. 2019, ch. 97, §§ 4-6 (effective Sept. 19, 2019) (codified at 15 M.R.S. § 5826(1), (2), (6) (2022)); P.L. 2021, ch. 454, § 13 (effective Oct. 18, 2021) (codified at 15 M.R.S. § 5826(9)).

court's judgment because we hold that (1) law enforcement agents had probable cause to support their stop of Lepenn, and (2) the court did not abuse its discretion in denying Lepenn's discovery motion.[3]

## I. BACKGROUND

[¶2]  The following facts are taken from the trial court's findings of fact after the suppression hearing, all of which are supported by competent evidence in the record, which evidence we view in the light most favorable to the court's order.  *See State v. Cunneen*, 2019 ME 44, ¶ 2, 205 A.3d 885.  Around April 24, 2019, an agent (the lead agent) of the Maine Drug Enforcement Agency (MDEA) received information from an MDEA task force agent that a cooperating defendant had information about a drug dealer in South Portland. Although the lead agent had not worked with this cooperating defendant before this case, another MDEA agent told him that the cooperating defendant had given officers reliable information in the past.[4]

---

[3]  We do not consider the issue of whether the lead agent's testimony about receiving a text message from the cooperating defendant was proper because this issue was raised only in a cursory manner in two footnotes, and we deem it waived.  *See Cooper v. Parsky*, 140 F.3d 433, 441-42 (2d Cir. 1998) (noting that "a contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote"); *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1480 (11th Cir. 1997) (holding that a damages claim was unpreserved when it was mentioned only in two cursory statements—one in the initial brief and one at oral argument); *see also* Alexander, *Maine Appellate Practice* § 404 at 242 (6th ed. 2022) ("[A]n issue addressed only in a footnote in a brief may be deemed to be waived.")

[4]  The cooperating defendant has been referred to as a "confidential informant" or "source of information" by the parties at various times.  The trial court, however, found that MDEA did not keep a confidential-informant file on her and that at the time of motion to suppress, she did not have an

[¶3]  The cooperating defendant told law enforcement that a suspected drug dealer lived in South Portland and went by the name "V."  The cooperating defendant also provided information about firearms kept by V, stated that V planned to make a trip to Boston to purchase drugs, provided a cellphone number for V, and said that V drove a vehicle with the license plate number "9765TE."  When the lead agent searched for the license plate number, he found that it was registered to Janal Lepenn, the wife of Lawz Lepenn, at 63 Washington Avenue, Saco.  The other agent had previously told the lead agent that he thought that V might be Lawz Lepenn.

[¶4]  The lead agent learned that Lawz Lepenn had previously lived in Haverhill, Massachusetts, and he contacted the Haverhill Police Department.  A detective in Haverhill informed the lead agent that Lepenn was on probation for attempted murder with a firearm and that the address associated with his probation had been changed to 63 Washington Avenue, Saco, Maine.  The lead agent observed that Lepenn's driver's license and the State of Maine Department of Corrections' website listed Lepenn's address as 113 MacArthur Circle East, South Portland, Maine.  Lepenn's conditions of probation included

---

agreement with law enforcement for her cooperation.  Therefore, this opinion, like the order on the motion to suppress, will refer to her as the "cooperating defendant."

4

a random-search condition that had been added when Lepenn's probation was transferred to Maine, and Lepenn had signed an order dated October 31, 2018, acknowledging the condition. The lead agent contacted Lepenn's assigned probation officer, who told the lead agent that the lead agent could search Lepenn at any time pursuant to Lepenn's probation conditions.

[¶5] The lead agent spoke with the cooperating defendant multiple times on April 29 and April 30. The cooperating defendant told the lead agent that she had purchased cocaine and cocaine base from V in the past; that V had invited her to go out of state to pick up drugs; that V sold drugs out of another individual's apartment at 10 Lombard Street, South Portland, Maine; and that she had seen V in a black SUV driven by a woman. The lead agent showed the cooperating defendant a photo of Lepenn and asked if she knew who the person in the photo was. The cooperating defendant responded, "Yes, that's V." The cooperating defendant told the lead agent that V had recently asked her to call him "Chris" and changed his phone number. The cooperating defendant then agreed to purchase drugs from Chris/V on behalf of MDEA.

[¶6] On May 2, 2019, the lead agent conducted surveillance outside 113 MacArthur Circle East. In the morning, he saw the vehicle with the license plate "9765TE" in the driveway, and when he returned in the afternoon, he saw

a black Jeep SUV in the driveway. The lead agent ran the plates on the black Jeep SUV and discovered that it was registered to a family member of an individual whom the lead agent knew was involved in drug trafficking. That afternoon, the lead agent saw an individual fitting Lepenn's description exit 113 MacArthur Circle East and get into the black Jeep SUV. At around 4:00 p.m., with the lead agent present, the cooperating defendant contacted the individual who lived at 10 Lombard Street about purchasing drugs from Chris. She told the lead agent that she had been told that Chris was "all set," which the lead agent understood, based on his training and experience, meant that Lepenn would sell drugs to the cooperating defendant. The cooperating defendant went to 10 Lombard Street, wearing a wire, and told the individual who lived at the apartment that she would get the money to purchase the drugs. The cooperating defendant then met with the lead agent and said that she could purchase seven grams of cocaine for $400.

[¶7] At around 7:30 p.m., the cooperating defendant received a message that Chris would soon be at the apartment. Agents searched the cooperating defendant, fitted her with a wire, and gave her pre-recorded "buy money" before returning to 10 Lombard Street. At the same time, an MDEA special agent surveilled 113 MacArthur Circle East. At around 8:00 p.m., the agent saw

6

a man matching Lepenn's description leave 113 MacArthur Circle East in a Toyota Camry. The agent followed the Camry to Lombard Street and saw the man exit the vehicle and enter the apartment building at 10 Lombard Street. The cooperating defendant was at the same building. A short while later, the lead agent saw the Camry drive away from the apartment building at 10 Lombard Street, and he followed the car. The lead agent called the Southern Maine Regional SWAT team to initiate a traffic stop of the Camry, then went to meet with the cooperating defendant.

[¶8] The SWAT team stopped the Camry, driven by Lepenn, and then searched it. During the search, officers found three cellphones, a digital scale, and money, including the $400 of pre-recorded MDEA money.[5]

[¶9] While the search of the vehicle was being conducted by the SWAT team, the lead agent met with the cooperating defendant and used a TruNarc analyzer to test the suspected drugs that she had purchased. The TruNarc analyzer rendered a presumptive positive result. The cooperating defendant

---

[5] Lepenn contends that this stop resulted in his de facto arrest because, as the record reflects, the SWAT officers had their guns drawn; the lead SWAT officer had his handgun pointed at Lepenn when he initiated the stop, though he then holstered his weapon; and Lepenn was detained in handcuffs and put in the back of a police car when law enforcement agents transported him to the the South Portland Police Department. As we discuss in our analysis, because we conclude there was probable cause to support the stop, we do not consider the issue of whether a de facto arrest occurred. *See State v. Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54.

described the transaction to the lead agent. She explained that she gave the money to the individual who lived at 10 Lombard Street, who gave it to Lepenn, and then Lepenn gave the drugs to the individual who lived at 10 Lombard Street, who then gave the drugs to the cooperating defendant. The lead agent then drafted a request for a search warrant for 113 MacArthur Circle East and 10 Lombard Street. The search warrant was issued, and law enforcement agents executed the warrant on the same day. Officers found $14,020 in cash, 526 grams of cocaine separated into 18 bags, an additional 25 grams of cocaine, approximately 100 rounds of .45 caliber ammunition, and a disassembled .25 caliber Titan handgun at 113 MacArthur Circle East.

[¶10] On August 9, 2019, the grand jury returned a six-count indictment. Lepenn was arraigned on the indictment and entered pleas of not guilty. Lepenn moved for discovery sanctions and to suppress the evidence found during the warrantless stop of his vehicle and the search of 113 MacArthur Circle East. On May 21, 2021, the trial court held a hearing on Lepenn's discovery motion for "specific information that [the cooperating defendant] provided to [MDEA agents] and all police reports related to arrests made pursuant [to that] information." Lepenn argued that this information related to the cooperating defendant's credibility. Lepenn further argued that he was

8

entitled to to discover all materials relevant to the cooperating defendant's credibility because the State needed to establish reasonable articulable suspicion to stop Lepenn and probable cause to arrest him, and therefore the credibility of the cooperating defendant was relevant. The trial court denied the discovery motion.

[¶11] On June 22, 2021, the trial court held a hearing on Lepenn's motion to suppress. Lepenn challenged, inter alia, the law enforcement agents' reasonable articulable suspicion to stop his vehicle and probable cause for the search warrant. The court heard testimony from the lead agent, Lepenn's probation officer, and the officer from the Southern Maine Regional SWAT team. In a written decision following the hearing, the court denied Lepenn's motion to suppress.

[¶12] Lepenn moved for further findings of fact regarding whether the stop of Lepenn was an arrest without probable cause, and the court denied his motion. On January 11, 2022, Lepenn entered a conditional guilty plea to one count of aggravated trafficking in scheduled drugs and conditionally admitted to two counts of criminal forfeiture. *See* M.R.U. Crim. P. 11(a)(2). In May 2022, the court (*O'Neil, J.*) held a sentencing hearing and sentenced Lepenn to

twenty-two years' incarceration with all but eight years suspended and four years of probation. Lepenn timely appealed. M.R. App. P. 2B(b).

## II. DISCUSSION

[¶13] Lepenn raises two issues. He contends that the trial court erred when it denied (1) his motion to suppress and (2) his request for additional discovery relating to the State's cooperating defendant.

### A. Motion to Suppress

[¶14] On appeal, Lepenn asserts that the trial court erred when it denied his motion to suppress.[6] More specifically, Lepenn argues that the conduct of the police at the time of the stop amounted to a de facto arrest without probable cause. The trial court found that the stop was justified because the search of Lepenn's vehicle was supported by reasonable articulable suspicion and that the search was reasonable under the totality of the circumstances because Lepenn was on probation.[7] We conclude that it is not necessary to determine

---

[6] Because Lepenn's brief asserts and develops his probable-cause claim based on the Constitution of the United States, not the Maine Constitution, we review his claim by applying federal law and principles. *See State v. Thomas*, 2022 ME 27, ¶ 13 n.3, 274 A.3d 356.

[7] We have held that regardless of whether a search is probationary or investigatory, law enforcement agents need only reasonable articulable suspicion when conducting a nonrandom search of a probationer, like Lepenn, who has a condition of probation allowing searches. *See State v. Diana*, 2014 ME 45, ¶¶ 17-20, 89 A.3d 132. However, neither we nor the United States Supreme Court has decided whether a completely suspicionless search of a probationer would be constitutional, although the U.S. Supreme Court has held that a suspicionless search of a parolee does

whether the officers exceeded the boundaries of a permissible *Terry* investigatory stop or whether Lepenn waived any objection to the search due to his probationary status because we hold that probable cause existed for the stop. *See State v. Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54.

### 1. Standard of Review and the Fourth Amendment

[¶15] "The denial of a motion to suppress is reviewed for clear error as to factual issues and de novo as to issues of law." *State v. Fleming*, 2020 ME 120, ¶ 25, 239 A.3d 648. "We review a motion court's application of the law to undisputed facts de novo." *Flint*, 2011 ME 20, ¶ 10, 12 A.3d 54. "If the court's ruling is proper under the law, it may be affirmed, even if for a reason different than that given by the motion court." *Id.* (alterations and quotation marks omitted).

[¶16] The Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures. U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). "A seizure is reasonable if made pursuant to an investigative detention based on reasonable suspicion of criminal activity, or if made pursuant to an arrest based on the higher standard of probable cause that a

---

not violate the Fourth Amendment. *See id.* ¶ 17 n.2; *see also United States v. Knights*, 534 U.S. 112, 116-20 & n.6 (2001); *Samson v. California*, 547 U.S. 843, 850-857 (2006).

crime has been committed." *State v. White*, 2013 ME 66, ¶ 12, 70 A.3d 1226. The inquiry into whether a de facto arrest occurred is unnecessary if the stop was supported by probable cause. *See Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54 ("In this case, we conclude that it is unnecessary to evaluate whether the officers' actions exceeded the bounds of a permissible investigatory stop because there was probable cause to arrest [the defendant].").

[¶17] "Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense." *State v. Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153 (quotations marks omitted). "The probable cause standard is flexible and based on common sense." *Flint*, 2011 ME 20, ¶ 12, 12 A.3d 54. "Although requiring more than mere suspicion, probable cause can be satisfied on less than the quantum of proof necessary to establish a fact by a fair preponderance of the evidence." *Id.* Probable cause has a very low threshold and uses an objective standard. *Lagasse*, 2016 ME 158, ¶ 14, 149 A.3d 1153. The determination of whether an officer has probable cause is not based on whether the particular officer believed that she had probable cause. *State v. Forsyth,* 2002 ME 75, ¶ 10, 795 A.2d 66.

### 2.     Analysis

[¶18]   Corroboration plays a significant role in determining whether, given the totality of the circumstances, there is probable cause, and we have held that information from known or named informants is more likely to be credible than information from an anonymous tip.  In *State v. Hasenbank*, we said that "[i]nformation from a known or named informant may provide readier justification for a stop-and-frisk than where the informant is anonymous." 425 A.2d 1330, 1333 (Me. 1981); *see United States v. Lopez-Gonzalez*, 916 F.2d 1011, 1014 (5th Cir. 1990) ("[T]ips from known informants are more likely to be credible and are thus entitled to greater weight in the *Terry* stop reasonable suspicion analysis."); *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (stating that the reputation of a known informant can be assessed and the informant "can be held responsible if her allegations turn out to be fabricated").  In the present matter, significantly, the police received information from a known cooperating defendant, rather than from an informant providing an anonymous tip.  *Cf. Illinois v. Gates*, 462 U.S. 213, 227 (1983) (concluding that an anonymous letter, standing alone, would not provide an adequate basis for probable cause

because it did not show that the author was honest or that the information in the letter was reliable).

[¶19] Here, the lead agent had probable cause to stop Lepenn because he received information from a cooperating defendant whose identity was known to law enforcement; the cooperating defendant agreed to set up, and participated in, a controlled buy with Lepenn; and law enforcement agents observed Lepenn travel from his residence to the location of the controlled buy. Additionally, the information that the cooperating defendant supplied to law enforcement suggested that she had knowledge of Lepenn's activities. On the day of the stop, law enforcement (1) corroborated the cooperating defendant's identification of the vehicle being used by Lepenn by determining that the vehicle was registered to Lepenn's wife and was at Lepenn's residence; (2) saw, at Lepenn's residence, a man fitting Lepenn's description and a black SUV registered to a family member of a known drug-dealer, corroborating the cooperating defendant's information that she had seen V in a black SUV; (3) had the cooperating defendant set up a controlled buy at 10 Lombard Street, corroborating the information that she supplied to law enforcement that V sold drugs at that address; (4) took the cooperating defendant to 10 Lombard Street and searched her before she entered the building; (5) followed Lepenn from his

residence to 10 Lombard Street, where the controlled buy was occurring; (6) saw Lepenn go into 10 Lombard Street; and (7) saw Lepenn leave 10 Lombard Street shortly after arriving, consistent with the lead agent's knowledge of how drug deals occur. This is sufficient information to support a prudent and cautious person's belief that Lepenn had committed or was presently committing a crime, satisfying the low threshold for probable cause. In sum, even if a de facto arrest occurred, as Lepenn argues on appeal, the stop and seizure were legal because they were supported by probable cause. *See State v. Rosario*, 2022 ME 46, ¶¶ 20-22, 280 A.3d 199.

[¶20]  Because we hold that the findings of fact made by the trial court support the conclusion that probable cause existed at the time of the stop, we do not need to determine whether there was a de facto arrest as opposed to a *Terry* stop. *See Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54.

**B.    Discovery Violation**

[¶21]  Lepenn contends on appeal that the trial court erred when it denied his motion for discovery seeking all material related to the cooperating defendant's previous dealings with law enforcement that reflects on her credibility.

[¶22]   Maine Rule of Criminal Procedure 16(c)(1) provides that a defendant may make a written request for the State to provide books, papers, documents, electronically stored information, photographs, tangible objects, or access to buildings and places that are "material and relevant to the preparation of the defense."  The rule applies to information relevant to proceedings other than the scope of trial, such as proceedings on motions to suppress.  *See State v. Simmons*, 435 A.2d 1090, 1093-94 (Me. 1981).  The rule is liberally interpreted and applied, but that does not mean that every specific discovery request made by the defendant must or should be granted. *State v. Cloutier*, 302 A.2d 84, 87 (Me. 1973).  The rule imposes an initial duty on the defendant to "*show* that the items sought may be material to the preparation of his defense *and that the request is reasonable*."  *Id.* (quotation marks omitted).  "This requirement precludes a fishing expedition by the defense into the prosecution file, and requires the defendant to show necessity for the inspection. *Something more than a bare allegation* by the defendant or his counsel that the items are material *and the request is reasonable* will be required."  *Id.* (quotation marks omitted).  Once the necessity is shown, "*if the request is reasonable*, the court *must* order the prosecuting attorney to permit the inspection."  *Id.* (quotation marks omitted).

[¶23] The trial court properly denied Lepenn's motion for two reasons: (1) the information sought was not relevant and (2) Lepenn had other means to obtain the information. First, Lepenn moved for the State to provide information relating to the cooperating defendant's history of cooperating with law enforcement and resulting arrests from that cooperation, which is relevant only to whether it was reasonable for law enforcement to rely on the information supplied by that informant in developing a reasonable, articulable suspicion or probable cause. Here, Lepenn knew the identity of the cooperating defendant; law enforcement independently corroborated her information; and the officers gathered additional evidence, including a controlled buy, before making the stop. Accordingly, her reliability as an informant was no longer an issue, and information about her past cooperation was not relevant. *See State v. Crowley*, 1998 ME 187, ¶ 6, 714 A.2d 834 (noting that "an informant's reliability is not to be considered an element separate and apart from the general inquiry" and that "corroboration enhances the credibility of information from informants that is presented in a search warrant") (alterations and quotation marks omitted); *see generally Adams v. Williams*, 407 U.S. 143, 146-49 (1972). Second, Lepenn could have subpoenaed either the other MDEA agent or the cooperating defendant as witnesses at the hearing on

the motion to suppress and explored the reliability of this information. *Cf. Gates*, 462 U.S. at 227, 243-46.  In light of the foregoing, Lepenn cannot show that the discovery request made to the State was reasonable.  Therefore, we conclude that Lepenn's claim of a discovery violation is not persuasive, and the trial court did not abuse its discretion when it denied his discovery motion.

### III.  CONCLUSION

[¶24]  We conclude that the court did not err in denying Lepenn's motion to suppress the evidence obtained at the time of the stop of Lepenn's vehicle and the evidence obtained as a result of the execution of the search warrant.  Additionally, the trial court did not abuse its discretion in denying Lepenn's motion for discovery.

The entry is:

Judgment affirmed.

---

Daniel A. Wentworth, Esq. (orally), and Dylan R. Boyd, Esq., Law Offices of Dylan Boyd, Portland, for appellant Lawz R. Lepenn

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine