MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2025 ME 3
Docket:        Cum-23-494
Argued:        September 10, 2024
Decided:       January 9, 2025

Panel:         STANFILL, C.J., and HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

DENNIS W. LOWERY

HORTON, J.

[¶1] Dennis W. Lowery appeals from a judgment of conviction of gross sexual assault (Class B), 17-A M.R.S. § 253(2)(D) (2024), entered by the trial court (Cumberland County, *O'Neil, J.*) after a jury found Lowery guilty. He argues that the court abused its discretion or violated his due process rights in denying his motions to dismiss and for a new trial, each of which was grounded on discovery violations, and that the court committed obvious error, in violation of Lowery's Fifth Amendment rights, by admitting testimony and allowing prosecutorial argument that Lowery did not ask why he was being detained after the police stopped him on the street. We affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt. *See State v. Brackett*, 2023 ME 51, ¶ 9, 300 A.3d 827.  On the evening of December 18, 2021, the victim had consensual sex with a male partner in a room that she had rented at a Portland inn.  They did not use a condom.  The partner left the room and indicated that he might be coming back.

[¶3]  Early in the morning on December 19, 2021, a different man, later identified as Dennis Lowery, rang the doorbell at the inn, and the inn's night auditor admitted him.  Lowery proceeded directly to the stairs, went up to the top floor, and entered the victim's room without her knowledge or permission.  She was sleeping after having taken her prescribed sleep medication.  She awoke to find Lowery on top of her with his penis in her vagina.  She screamed for him to get off her.  Lowery got up, dressed, and left the inn.

[¶4]  The victim got dressed and went to the lobby.  She asked the night auditor at the inn to call 9-1-1.  She provided the police with a description of the person who had entered her room, and based on that description, an officer found Lowery outdoors a few blocks away.  Later, the victim's DNA was

identified in menstrual blood staining the underwear that Lowery had been wearing when the police located him.

[¶5] On December 20, the State charged Lowery by complaint with burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2024), and gross sexual assault (Class B), 17-A M.R.S. § 253(2)(D). The grand jury returned an indictment for those two counts on February 9, 2022. The court (*Mead, J.*) held a judicial settlement conference in April 2023, but no settlement was reached.

[¶6] The State and Lowery each filed a witness list on July 20, 2023. The State did not list three individuals who had roles in handling physical evidence—Emma Hewett, Betsy Chapman, and Jamie Beals. The State "reserve[d] the right to amend [its] witness list at any time upon reasonable notice to the Defendant and the Court." Lowery listed Chapman and Beals in his witness list.

[¶7] On October 2, the first day scheduled for trial, Lowery filed a motion to dismiss the charges against him on the ground that the State had violated discovery rules by failing to provide information regarding Hewett, Chapman, or Beals despite their names appearing in property history reports provided to Lowery on January 11, 2023. Lowery indicated that Hewett had handled oral, anal, and genital swabs taken from the alleged victim and the extracts prepared

4

from those swabs. He asserted that Chapman had handled several items, including both the kit that contained the swabs and the underwear collected from Lowery, and that Beals had handled the underwear collected from Lowery. Lowery further asserted that he had not received a resume for the named Sexual Assault Nurse Examiner who collected samples from the victim at the hospital after the victim spoke with police. The State indicated that it had been trying to get her resume for two months.

[¶8] The court held a jury trial from October 2 to 6, 2023. Before bringing in the jury to hear testimony, the court considered Lowery's motion to dismiss. The State indicated that it had not intended to call Hewett or Beals. It had notified Lowery one day before trial of its intention to call Chapman as a witness. The court denied Lowery's motion to dismiss. The court reasoned that the State had satisfied its obligation to identify the people in the chain of custody in a timely fashion. As to the nurse whose resume Lowery lacked, the court authorized voir dire at Lowery's request.

[¶9] At trial, an officer testified that he located Lowery on December 19, 2021, as Lowery was walking east on Congress Street away from the inn, wearing clothes that matched the victim's description of her assailant's clothing. He testified that Lowery walked away down a driveway but paused

when he saw the officer. The officer testified that upon stopping Lowery, he told Lowery that the police were looking into something that had just happened down the street. According to the officer, Lowery remained quiet and submitted to a pat-down. The officer testified that he found it "very strange" that Lowery did not ask why he was being detained. Lowery did not object to the testimony. The officer further testified that he had Lowery sit in the back of the police car so that Lowery would stay warm and that, after the officer told Lowery, five to ten minutes later, that he was taking him to the police station, Lowery said nothing. The officer testified, "I don't believe [Lowery] asked me why or really said anything of note, to be honest."[1] Lowery did not object to this testimony. On cross-examination, the officer conceded that Lowery had the right to remain silent when police spoke to him.

[¶10] The jury later heard testimony from the nurse who examined the victim at the hospital and collected swabs of her body, and from Chapman, the Portland Police Department's property and evidence coordinator. Chapman testified about officers depositing physical evidence, including the swabs of the victim and Lowery's underwear, into the evidence locker and removing the items when they were sent to the Crime Lab.

---

[1] Lowery does not contend that he was under arrest at this time and raises arguments about "pre-arrest" silence only.

[¶11] The State offered testimony from Maine State Police Crime Lab employees. One of the Crime Lab employees was a forensic chemist who worked with a forensic technician to administer serological tests of the swabs from the alleged victim. When the chemist asked to look at her notes to see which evidence technician worked with her, Lowery objected that he had not received the notes in discovery. He argued that evidence regarding the testing should not be admitted because of the asserted discovery violation, that he was being deprived of the right to confront the evidence technician as a witness, and that his due process rights were violated. The court overruled the objection but stated, "[I]f the State can make an effort to make this witness available, the Court would appreciate that." The forensic chemist testified that Emma Hewett had been the technician who assisted her with some of the testing of the oral, genital, anal, and vaginal cervical swabs, and that Hewett had done the work without the chemist's supervision. She testified that she—not Hewett—had performed all processing and preliminary testing of Lowery's underwear. The court indicated that Lowery would have the opportunity to voir dire Hewett if the State could have her appear the next day.

[¶12] The next day, Hewett was present to testify. The State argued that the chain of custody was already adequate, that the forensic chemist's expert

opinion was admissible even if the chemist relied on the nonexpert work of Hewett, and that there was no remaining Confrontation Clause issue because Hewett was present to testify. The court overruled Lowery's objection to the State's calling Hewett, and Hewett testified about her work in the case extracting sperm from the swabs received and performing tests of swabs without analyzing the results. Analysis later revealed that the sperm was not Lowery's. The State submitted no evidence that the oral, genital, anal, or vaginal cervical swabs revealed any DNA from Lowery. The State rested its case without ever calling Beals as a witness. Lowery presented testimony from one witness and rested his case after deciding not to testify.

[¶13] During her closing argument, the prosecutor noted that the officer who found Lowery had said "that it is very unusual that someone gets detained by police and doesn't question why or ask any questions of the police at all." She further argued that during the drive to the police station, Lowery "didn't ask any questions about why he was being brought to the police station." She argued, "He didn't question his detention and I submit to you that's because he knew why he was being detained." Lowery did not object to this argument.

[¶14] The following day, the jury returned a verdict finding Lowery guilty of both burglary and gross sexual assault. Lowery moved for a judgment

8

of acquittal or for a new trial.  Among other arguments, Lowery contended that the charges should have been dismissed with prejudice for discovery violations by the State, especially because the State could have provided discovery during Lowery's incarceration, which had begun nearly two years before trial, on December 19, 2021.

[¶15]  After accepting additional memoranda and then hearing oral argument on November 17, 2023, the court concluded that no discovery violation rose to such a level that dismissal or a new trial was required.  The court denied the motion for a judgment of acquittal as to gross sexual assault. It entered a judgment of acquittal as to the burglary charge, however, on grounds not at issue here.[2]

[¶16]  The court held a sentencing hearing the same day and on November 28, 2023, entered a judgment sentencing Lowery to seven years in prison followed by six years of supervised release.  Lowery timely appealed.[3] *See* 15 M.R.S. § 2115 (2024); M.R. App. P. 2B(b)(2).

---

[2]  The court entered the judgment of acquittal because the indictment alleged that Lowery intended to commit a "sexual assault"—not the statutory crime of "gross sexual assault"—and the court concluded that it had therefore improperly instructed the jury as to gross sexual assault for purposes of the burglary charge.

[3] Although Lowery also sought sentence review, the Sentence Review Panel denied his application to allow a sentence appeal.  *State v. Lowery*, No. SRP-23-493 (Me. Sent. Rev. Panel Apr. 22, 2024).

## II. DISCUSSION

[¶17] On appeal, Lowery challenges (A) the court's handling of the State's alleged discovery violations and (B) the court's admission of evidence, and allowance of argument, regarding Lowery's pre-arrest silence. We consider each issue in turn.

## A. Alleged Discovery Violations

[¶18] Rule 16 of the Maine Rules of Unified Criminal Procedure governs discovery in criminal cases. That rule requires the attorney for the State to provide to the defendant "[t]he names, dates of birth, and . . . the addresses of the witnesses whom the State intends to call in any proceeding." M.R.U. Crim. P. 16(a)(2)(H). The information must ordinarily be provided at arraignment, but "[i]f additional material that would have been furnished to the defendant as automatic discovery comes within the possession or control of the attorney for the State after" that time, "the attorney for the State shall so inform the defendant within 14 days thereafter." M.R.U. Crim. P. 16(b)(4), (5). The court has several options available in the event that the State does not comply with these provisions; it "may take appropriate action, which may include, but is not limited to, one or more of the following: requiring the attorney for the State to comply; granting the defendant additional time or a continuance;

relieving the defendant from making a disclosure required by Rule 16A; prohibiting the attorney for the State from introducing specified evidence; and dismissing charges with or without prejudice." M.R.U. Crim. P. 16(e).

[¶19] The underlying purposes of the discovery rule are to "enhance[e] the quality of the pretrial preparation of both the prosecution and defense and diminish[] the element of unfair surprise at trial, all to the end of making the result of criminal trials depend on the merits of the case rather than on the demerits of lawyer performance on one side or the other." *State v. Thurlow*, 414 A.2d 1241, 1244 (Me. 1980); *see also State v. Poulin*, 2016 ME 110, ¶ 29, 144 A.3d 574. Sanctions for mistakes made in discovery "should be tailored to the individual circumstances of each case, with a focus on fairness and justice." *State v. Reed-Hansen*, 2019 ME 58, ¶ 10, 207 A.3d 191.

[¶20] Lowery argues that the court abused its discretion and violated his due process rights in denying his motion to dismiss when the State had not timely listed Hewett, Chapman, or Beals as witnesses or disclosed information about them and the nurse before trial as required by Rule 16 of the Maine Rules of Unified Criminal Procedure. He contends that the disclosure of witnesses and information about them was necessary for him to prepare for trial and participate meaningfully in the judicial settlement conference. Lowery also

argues, on the same basis, that the court abused its discretion in denying his motion for a new trial.

### 1. Admission of Testimony of Witnesses Not Listed

[¶21] We review for an abuse of discretion the admissibility of testimony from witnesses who were not timely designated. *See State v. Cushing*, 602 A.2d 1169, 1170 (Me. 1992). "Allowing an unlisted witness to testify . . . is within the discretion of the trial court and such action will not be deemed an abuse of judicial discretion in the absence of a showing of surprise or prejudice." *State v. Tullo*, 366 A.2d 843, 849 (Me. 1976).

[¶22] "[P]arties are obligated to reveal the names of all potential witnesses that could be reasonably anticipated, prior to voir dire, regardless of whether counsel plans to call the witness as part of their case in chief or in rebuttal." *State v. Gagne*, 2017 ME 63, ¶ 38, 159 A.3d 316. A trial court does not abuse its discretion in allowing testimony when the defendant was aware, from reviewing disclosed materials, of the witness's role in the case. *Cushing*, 602 A.2d at 1170. A trial court may, however, take steps to ensure the fairness of the proceeding by providing an opportunity for witness voir dire, with cross-examination, or by granting a continuance to allow for additional preparation time. *See State v. White*, 460 A.2d 1017, 1022 (Me. 1983).

12

[¶23]  Applying these standards, the court did not abuse its discretion here.  Lowery was aware of the roles of Beals, Chapman, and Hewett.  Beals did not testify.  Chapman testified only about how the items were placed into and removed from the evidence locker at the Portland Police Department.  *See State v. Coleman*, 2018 ME 41, ¶ 31, 181 A.3d 689 ("A chain of custody need not be ironclad, and a minor break goes to the weight of the evidence rather than its admissibility." (alterations and quotation marks omitted)).  The State did not originally intend to call Hewett but did so to ensure that Lowery had the opportunity to cross-examine her after the chemist's testimony about her role.  Hewett testified only that she had conducted tests of evidence for others to analyze,[4] and the State offered no evidence that the items that she ran tests on revealed Lowery's DNA.  Given the court's allowance of voir dire of Hewett, *see White*, 460 A.2d at 1022, and Lowery's inclusion of Chapman in his own

---

[4]  The court had already admitted evidence of the testing from the forensic chemist because an expert may, in forming an expert opinion, rely on "facts or data in the case that the expert has been made aware of," including facts or data upon which "experts in the particular field would reasonably rely . . . in forming an opinion on the subject."  M.R. Evid. 703; *see also State v. Abdullahi*, 2023 ME 41, ¶¶ 24-25, 298 A.3d 815 (distinguishing between expert and lay witnesses).  Because Hewett appeared at trial, we need not consider whether, under the Confrontation Clause, a lab *technician*—as opposed to a lab analyst—must be produced as a witness for the analysis of forensic testing to be admissible.  *Cf. Smith v. Arizona*, 602 U.S. 779. 802-03 (2024) ("A State may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her.  Neither may the State introduce those statements through a surrogate analyst who did not participate in their creation." (citations omitted)).

witness list, the court did not abuse its discretion in admitting the testimony of Chapman and Hewett.

### 2. Motions to Dismiss and for a New Trial

[¶24] "We review for an abuse of discretion a trial court's sanction for a discovery violation," including the decision whether to dismiss criminal charges for the violation. *State v. Page*, 2023 ME 73, ¶¶ 7-8, 14, 306 A.3d 142 (quotation marks omitted). The denial of a motion for a new trial is reviewed for an abuse of discretion, with any findings underlying the decision reviewed for clear error. *State v. Daluz*, 2016 ME 102, ¶ 44, 143 A.3d 800.

[¶25] "For a jury verdict to be overturned on appeal based on an alleged discovery violation, the alleged violation must have prejudiced the defendant to the extent that it deprived [the defendant] of a fair trial." *State v. McBreairty*, 2016 ME 61, ¶ 19, 137 A.3d 1012; *see also Page*, 2023 ME 73, ¶ 14, 306 A.3d 142. When the trial court has imposed a sanction for a discovery violation, we "look for a prejudicial effect on the defendant as a result of the discovery violation, as mitigated—or not—by the trial court's ruling." *Page*, 2023 ME 73, ¶ 14, 306 A.3d 142 (quotation marks omitted). "When a defendant contends that a discovery violation and the court's response to it violated [the defendant's] right to a fair trial, we review the trial court's procedural rulings

to determine whether the process struck a balance between competing concerns that was fundamentally fair." *Id.* (quotation marks omitted). "Unless a defendant has demonstrated that he was in fact prejudiced by the discovery violation despite the court's effort to nullify or minimize the consequences and that the prejudice rose to the level of depriving him of a fair trial, a trial court's decision not to impose sanctions for discovery violations cannot be characterized as either an abuse of discretion or an error of law." *State v. Sanborn*, 644 A.2d 475, 479 (Me. 1994).

[¶26] Here, the alleged discovery violations either were not violations at all or were not of sufficient gravity to undermine the fairness of the proceeding and require a new trial given the court's handling of the affected testimony. Lowery asserts that he was entitled to the resumes of Chapman and of the Sexual Assault Nurse Examiner as part of automatic discovery. As we have explained regarding resumes,

> Maine Rule of Unified Criminal Procedure 16 requires the State to produce, through automatic discovery, "[a]ny reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons." M.R.U. Crim. P. 16(a)(2)(G).... The defendant may make a written request of the State for materials beyond those required to be produced as part of automatic discovery. M.R.U. Crim. P. 16(c)(1). If the State objects to that request, the defendant can file a motion asking the

court to order the State to provide the additional discovery. M.R.U. Crim. P. 16(d)(2).

*State v. Green*, 2024 ME 44, ¶ 11, 315 A.3d 755. Absent a specific request for supplemental discovery and a motion to compel discovery in advance of trial, a failure to produce a resume is not a discovery violation. *Id.* ¶ 13. Furthermore, at trial, the court authorized voir dire of the nurse who examined the victim.

[¶27] Lowery also argues that the State's failure to disclose the forensic chemist's lab notes before trial deprived him of the right to a fair trial. Whether or not the State was required to disclose those notes, there is nothing in the record to suggest that the lack of disclosure affected the fairness of the proceedings. The court exercised its discretion to authorize Lowery to demand voir dire of Hewett, who had been mentioned in the notes but was already known to Lowery.[5]

[¶28] Finally, although in other circumstances late-disclosed information about witnesses could affect the fairness of a judicial settlement conference, nothing in the record here suggests that any lack of information rendered counsel unprepared "to engage in meaningful discussion regarding

---

[5] With respect to Lowery's claims that the State failed to provide information regarding Beals, the State neither listed nor called Beals as a witness, and Beals appears from the Portland Police Department's evidence log to have handled evidence only after it had been tested.

all aspects of the case with a view toward reaching an appropriate resolution," M.R.U. Crim. P. 18(b), in April 2023 before either party had filed a witness list.

[¶29] The court did not err or abuse its discretion—or deprive Lowery of his due process right to a fair trial—in authorizing witness voir dire but denying Lowery's motion to dismiss or his motion for a new trial on the basis of discovery violations.[6] *Page*, 2023 ME 73, ¶ 14, 306 A.3d 142.

## B.  The Fifth Amendment and the Right to Remain Silent

[¶30]  Lowery contends that the court committed obvious error in admitting evidence that Lowery remained silent and did not ask questions when approached by police.  He argues that his "pre-arrest silence was made an indicator of guilt" in violation of the Fifth Amendment.[7]

---

[6] Nor has Lowery demonstrated a violation of the dictates of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  He has not shown that the State withheld evidence that was favorable to him.  *See State v. Nisbet*, 2018 ME 113, ¶ 29, 191 A.3d 359.  Lowery already knew that the swab tests did not reveal the presence of his DNA; he just did not know that Hewett was the person who conducted the tests.  Beals did not testify and in any event handled evidence only after its testing.

[7] Although Lowery includes a footnote indicating that the Maine Constitution provides more protection than its federal counterpart with respect to the privilege against self-incrimination, the argument in the body of his brief focuses exclusively on Fifth Amendment law, and Lowery does not seek the application of the primacy approach to constitutional analysis.  Any argument under the Maine Constitution is, therefore, unpreserved.  *See State v. Norris*, 2023 ME 60, ¶¶ 33-37, 302 A.3d 1; *see also State v. Lepenn*, 2023 ME 22, ¶ 1 n.3, 295 A.3d 139 (declining to review an issue that received only cursory mention in a footnote).  He also did not preserve at trial an argument that the Maine Constitution requires courts to consider the fact that a Black man confronted by police may remain silent out of fear.  *Cf. State v. Fleming*, 2020 ME 120, ¶ 17 & n.9, 239 A.3d 648.  He argues only that the combination of race-based fear and the comments he made *after* he arrived at the police station made it "ambiguous as to what he was stating to police about his detention and silence."  Because our decision turns on whether Lowery invoked the right to remain silent *before* arriving at the police station, we are not persuaded by this argument.

[¶31]  Because Lowery did not object to the admission of evidence of his pre-arrest silence or to prosecutorial argument concerning that silence, we review for obvious error whether the court erred in admitting that evidence and allowing prosecutorial argument.  *See State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066; *State v. Tripp*, 2024 ME 12, ¶ 21, 314 A.3d 101.  To vacate a conviction under the obvious error standard of review, there must be a plain error that affects substantial rights, and "the error must seriously affect the fairness and integrity or public reputation of judicial proceedings."  *Tripp*, 2024 ME 12, ¶ 21, 314 A.3d 101 (alterations and quotation marks omitted).  A defendant who challenges alleged prosecutorial error on appeal but who did not object to the error at trial carries a significant burden; "when a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding." *Id.* (alteration and quotation marks omitted).

[¶32]  The Supreme Court of the United States has held that the admission of evidence of pre-arrest silence against a defendant who does not

testify[8] does not violate the Fifth Amendment when a defendant answers several questions from law enforcement officers and then becomes silent. *Salinas v. Texas*, 570 U.S. 178, 182, 186 (2013). The Supreme Court's opinion in *Salinas* "appears to have created a new question regarding the sufficiency of invocation of the right under the Fifth Amendment." *Commonwealth v. Molina*, 104 A.3d 430, 441 (Pa. 2014).

[¶33] We recently opined that for evidence of pre-arrest silence to be excluded under the Fifth Amendment, a defendant must have invoked the right to remain silent. *See Tripp*, 2024 ME 12, ¶¶ 22-23, 314 A.3d 101 (holding that the defendant had not invoked the right to remain silent when he "was not in custody, and beyond remaining silent . . . did not expressly state nor otherwise manifest his intention to exercise the constitutional right against self-incrimination"). "Although we have never required the use of any specific words for a person to enjoy constitutional protection for his or her silence, we do require that the record demonstrate the defendant's intention to exercise

---

8 Evidence of a *testifying* defendant's pre-arrest silence may be used, without violating the Fifth Amendment, to impeach the defendant's credibility. *See State v. Nobles*, 2018 ME 26, ¶ 25, 179 A.3d 910.

the constitutional right against compelled self-incrimination."[9]  *Id.* ¶ 22 (quotation marks omitted).

[¶34]  For example, a person who is not in custody may invoke the right to remain silent by indicating a desire to speak with a lawyer and then refusing to speak with law enforcement officers.  *Lovejoy*, 2014 ME 48, ¶¶ 24-29, 89 A.3d 1066.  In many pre-arrest contexts, however, "a defendant is not deemed to have exercised the constitutionally protected right against compelled self-incrimination by virtue of silence alone."  *Tripp*, 2024 ME 12, ¶ 22, 314 A.3d 101 (quotation marks omitted); *see also Salinas*, 570 U.S. at 186 ("[A] defendant normally does not invoke the privilege by remaining silent.").

[¶35]  Here, Lowery's silence preceded any questioning about what had happened—the officer testified only about Lowery's silence when the officer informed him that the police were looking into a nearby incident and when the officer told Lowery that the officer was taking him to the police station.  Lowery was not asked any questions and did not indicate any intention to invoke his privilege by words or actions.  *See Tripp*, 2024 ME 12, ¶ 23, 314 A.3d 101

---

[9]  Lowery's references in his brief to cases in which the defendant invoked the privilege are therefore inapposite.  *See, e.g., Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir. 2000) ("In the instant case, Combs clearly invoked the privilege against self-incrimination by telling the officer to talk to his lawyer, thus conveying his desire to remain silent without a lawyer present."); *Coppola v. Powell*, 878 F.2d 1562, 1567 (1st Cir. 1989) (holding that the defendant invoked the privilege by saying, "Let me tell you something.  I'm not one of your country bumpkins.  I grew up on the streets of Providence, Rhode Island and if you think I'm going to confess to you, you're crazy." (quotation marks omitted)).

(holding that the Fifth Amendment is not violated when a person does not "expressly state nor otherwise manifest [the] intention to exercise the constitutional right against self-incrimination" before arrest). Thus, the court's admission of that evidence did not amount to a Fifth Amendment violation. *See id.* Without error, there is no obvious error. *See id.* ¶ 21. For the same reasons, there was no prosecutorial error when the prosecutor elicited testimony about Lowery's pre-arrest silence and then commented on it in her closing argument. *See id.*

[¶36] That said, however, the probative value of Lowery's pre-arrest silence was limited at best. A person may be silent while detained for different reasons, including that the person is hesitant to question the police. Had Lowery invoked Rule 403 of the Maine Rules of Evidence and argued that the probative value of evidence of his silence was substantially outweighed by the danger of unfair prejudice due to jury speculation about his reason for remaining silent, the court might well have excluded the evidence. *See* M.R. Evid. 403; *cf. State v. Hoggins*, 718 So. 2d 761, 766-67 & nn.8, 10 (Fla. 1998) (summarizing states' holdings regarding the admissibility of pre-arrest silence given the limited probative value of such evidence); *Grier v. State*, 718 A.2d 211, 217 (Md. 1998) (stating that although evidence of silence is "generally

inadmissible because '[i]n most circumstances silence is so ambiguous that it is of little probative force,'" it may be admitted "if it is in response to an assertion which the party would, under all circumstances, naturally be expected to deny" (quoting *United States v. Hale,* 422 U.S. 171, 176 (1975))). The admissibility under Rule 403 of a defendant's pre-arrest silence is an issue that, in another case, we might be called upon to address, but here, because it was not preserved in the trial or on appeal, the issue is not before us.

The entry is:

Judgment affirmed.

---

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Dennis W. Lowery

Jacqueline Sartoris, District Attorney, and Molly Butler Bailey, Asst. Dist. Atty. (orally), Prosecutorial District No. Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2021-5247
FOR CLERK REFERENCE ONLY